UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 19-20172-CIV-SCOLA

VANESSA CABRERA,

    Plaintiff,

v.

PROGRESSIVE BEHAVIORAL SCIENCE,
INC., and MARIA ARIZMENDI, individually,

    Defendants.

_____/

**DEFENDANTS' MOTION TO STAY DISCOVERY UNTIL THE DEFENDANTS' DISPOSITIVE MOTION TO DISMISS IS DECIDED**

Defendants, Progressive Behavioral Science, Inc. and Maria Arizmendi (hereinafter referred to as "Defendants", unless specifically referred to), through their undersigned attorneys, file this Motion to Stay Discovery, and state as follows:

### BACKGROUND

Plaintiff filed a Complaint against Defendants. [D.E. 1]. Plaintiff alleged that the Defendants failed to pay her overtime due under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* Plaintiff was and is a BCBA (Board Certified Behavioral Analyst), who provides services to children with autism. While Plaintiff alleges that she was an employee, Plaintiff had her own business that was incorporated which was paid for the services that she provided to the Defendants' clients; moreover, the industry standard is that BCBAs are independent contractors, and this is so because they are unsupervised, they meet and analyze behavior on their own, without supervision, of children with autism, they directly compete with companies like Progressive, and the BCBAs work as much or as little as they want, and choose whatever programming they want for the children. (*Defendants' Motion to Dismiss*). In fact, while Plaintiff was providing services to the corporate Defendant, Plaintiff was busy operating her own competing business (all of which was known to the corporate Defendant and allowed) and continues to operate that competing business. The competing business that the Plaintiff operates is still in operation and directly competing against the corporate Defendant.

Plaintiff initially filed suit solely on an overtime claim, that is, that she worked more than 40 hours in a week, and accused Defendants of fraudulently and intentionally misclassifying her in order to as part of an illegal scheme to evade overtime payments under the FLSA, but the Plaintiff invoiced Progressive every two weeks and listed the hours that she was invoicing, because she billed Progressive by the hour, but Plaintiff, according to her own invoices, never billed for having provided services for more than 40 hours in any one workweek. [D.E. 22 Ex.1 ¶ 4] (Declaration of Maria Arizmendi, which is based on invoices provided by the Plaintiff). In fact, Plaintiff never invoiced more than 35.5 hours in any one workweek, and at that, only week about 3 years ago. The Declaration of Maria Arizmendi based on the actual invoices that the Plaintiff supplied. This renders this entire case completely frivolous, and frankly, renders the allegations about a fraudulent misclassification to evade the FLSA defamatory, which is set forth in two previous motions to dismiss and will be set forth in the one to the Second Amended Complaint. For example, regarding Plaintiffs' overtime claim, far from working more than 40 hours a week, **in the two years prior to initiating this case**, **Plaintiff worked an average of 3.2 hours a week**. [D.E. 22 Ex.1 ¶ 4]. This fact needs to be reviewed in conjunction with the Plaintiff's Statement of Claim, which we do below. The Defendants have previously requested that this Court find that the matter is frivolous, dismiss it accordingly, if nothing more, pursuant to its own inherent powers to control litigation, and will file a similar motion when it is due on April 29, 2019.

In Plaintiff Cabrera's Statement of Claim, she states that she *worked on average 45 hours per week servicing Defendants' clients*, and is seeking 5 overtime hours per week at a half-time rate, for *all* workweeks that she claims to have been available to provide services to the corporate Defendant under the theory that she provided services for 45 hours per week (83 such weeks). [D.E. 11]. Plaintiff Cabrera appears to claim that the 45 hours per week is based on 5 hours she provided for "trainings, meetings, and other things", all at $83.00/hr, which Plaintiff claims is a time and one-half rate. As set forth below, it is not plausible that Plaintiff Cabrera provided services for 45 hours per week, as the bi-monthly invoices that Plaintiff Cabrera sent the corporate Defendant for payment over the last 3 years state that there were many weeks in which she failed to provide *any* services for the corporate Defendant at all, many weeks in which she performed an hour (or two or three), and one week where she invoiced 35.5 hours, and many weeks in between these ranges. [D.E. 22 Ex.1 ¶¶ 1-4]. As will be set forth in the Motion to

2

Dismiss, it is not plausible that even the 1 week in which Plaintiff invoiced 35.5 hours that she provided services for more than 5 hours that were not invoiced for.  Even if not, .5 is de minimis and does not justify thousands of dollars in discovery costs and attorneys' fee generation under the proportionality test.

These invoices, which Plaintiff still has because she generated them, were provided to the Plaintiff before she amended the Complaint as they were attached to the initial Motion to Dismiss; moreover, despite their existence, the Plaintiff submitted a Statement of Claim that, frankly, is a sham.  Plaintiff Cabrera has not seen fit to amend the Statement of Claim.  Given the indisputable fact that the Plaintiff submitted invoices for the time spent with the Defendants' clients, it is simply not only not plausible that Plaintiff Cabrera provided services to those clients every week for 45 hours per week but also a sham to allege and take the position in this case that she did.  Because of this implausibility, the case should be dismissed, as to her overtime claims, given that she has had time to rectify these deficiencies before filing the FAC and the SAC (she had the invoices initially because they are hers, and they were filed in the Court file attached to the Motion to Dismiss the original Complaint) coupled with her failure to amend the Statement of Claim.  The Court may wonder under these circumstances why Plaintiff would continue to maintain the case, and the reason appears to be that Plaintiff is a business competitor of the Defendants, and was competing (openly and without any objection from Defendants) against them even when she was providing services to the corporate Defendant.  As stated, regarding Plaintiff's overtime claim, far from working more than 40 hours a week, **in the two years prior to initiating this case**, **Plaintiff provided services for an average of 3.2 hours a week**.  Had Plaintiff provided services for an additional 5 hours which she did not invoice for as set forth in the Statement of Claim, it does not even get her to 10 hours per week, much less >40.  All of this was discussed in detail in Defendants' Motion to Dismiss the Complaint [D.E. 9], and to dismiss the First Amended Complaint.  [D.E. 11].

Whether it be an overtime claim or a minimum wage claim, Defendants stress that such claims must be pled and proven by the workweek, as the regulations are entitled "all workweeks stand alone".  29 C.F.R. §§ 778.103, 778.104.

Plaintiff then amended the Complaint to add Plaintiff Negron, who brought solely a minimum wage claim, and to add a minimum wage claim for Plaintiff Cabrera. [D.E. 13].  Then, after a case dispositive motion was filed that clearly showed that all claims by both Plaintiffs

3

were frivolous [D.E. 22], Plaintiff sought to amend the First Amended Complaint (which was allowed), by dropping Plaintiff Negron, and limiting Cabrera's claims to the original overtime claims brought in the original pleading. [D.E. 35]. A Motion to Dismiss, similar to the original Motion to Dismiss will be filed on or before April 29, 2019, when it is due. In light of the above, and given what appears to be a complete absence of any claim for overtime, Defendants' request that the Court stay discovery, particularly having to respond to the Plaintiff's initial sets of discovery Response to which are currently due to be served on or before April 26, 2019. At a minimum, responding to the discovery, given the above, is not cost effective, and under the proportionality test typically used to determine the scope and parameters of discovery is such that under the facts of this case, until Plaintiff can demonstrate that there is a viable case here, the Defendants should not be required to expend monies responding to discovery. We do not take this request lightly, as undersigned counsel does not believe he has ever filed a similar motion before in a case, seeking to stay discovery until a motion to dismiss is decided.

## **MEMORANDUM OF LAW**

### I. THE LEGAL STANDARDS FOR GRANTING A MOTION FOR STAY OR PROTECTIVE ORDER PURSUANT TO RULE 26(c).

"A stay of discovery is appropriate where the movant shows good cause and reasonableness." *Pierce v. State Farm Mut Auto. Ins. Co.,* 2014 WL12528362, at *1 (S.D. Fla.). "Courts have found good cause to stay discovery exists when the resolution of a preliminary motion may dispose of the entire action." *Id.* In particular, a stay is appropriate where a motion to dismiss "raise[s] serious questions regarding the viability of [the plaintiffs] complaint." *Redford v. Gwhmett Cnty. Jud. Or.,* 350 Fed. App'x. 341, 346 (11th Cir. 2009) (affirming stay of discovery); *see also Moore v. Potter,* 141 F. App'x. 803, 807 (11th Cir. 2005); *Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1367 (11th Cir. 1997).

"To evaluate whether there is a strong likelihood 'the [dismissal] motion will be granted and entirely eliminate the need for such discovery,' the district court must take a 'preliminary peek' at the merits of the motion." *Dayem ex rel. Dayem v. Chavez,* 2014 WL 12588513, at *1 (S.D. Fla.) (quoting *Feldman v. Flood,* 176 F.R.D. 651, 652-53 (M.D. Fla. 1997) (brackets in original)). "The court must also weigh 'the harm produced by a delay in discovery' against 'the likely costs and burdens of proceeding with discovery.'"

*Id.* (quoting *Feldman,* 176 F.R.D. at 652). "Both concerns are important—while a defendant should not be forced to expend substantial resources answering discovery when the plaintiff's claims clearly lack merit, the delay and prolongation of discovery can also create case management and scheduling problems and unfairly hold up the prosecution of the case." *Id.* (citations omitted). "Ultimately, the proponent of the stay bears the burden of demonstrating its necessity, appropriateness, and reasonableness." *Id.* (citing *McCabe v. Foley,* 233 F.R.D. 683,685 (M.D. Fla. 2006).

The instant Motion can also be looked as a Motion for Protective Order. The legal standard governing the grant of a protective order is that one can be granted to protect a party from annoyance, undue burdens, upon a showing of "good cause." *Glenmede Trust Co. v. Thompson*, 56 F.3d 476 (3d Cir. 1995) (stating that good cause is established when disclosure will cause clearly defined and serious injury). The party seeking the protective order has the burden of showing that good cause exists by stating particular and specific facts. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 (1981).[1] Federal Rule of Civil Procedure 26(c) specifically instructs the court to limit the frequency or extent of discovery if justice so requires to protect a party or witness from annoyance, embarrassment, oppression, or undue burden or expense. Rule 26(b)(1) instructs the court to limit the frequency or extent of discovery if:

> (i) the discovery sought is unreasonably cumulative or is obtainable from a more convenient or less burdensome or expensive source, (ii) the party seeking the discovery has had ample opportunity to obtain the information, or (iii) the discovery is unduly burdensome or expensive taking into account the circumstances of the particular case.

Steven Baicker-McKee, *Federal Civil Rules Handbook*, 411 (1998 ed.). "The burden is upon the movant to show the necessity of [a protective order's] issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998). In other words, the party seeking the protective order must show good cause by demonstrating a particular need for protection. *Cipollone v. Liggett*

---

[1] "Good cause" is a well established legal phrase. *In re Alexander Grant & Co. Litigation*, 820 F.2d 352, 356 (11th Cir. 1987). Although difficult to define in absolute terms, it generally signifies a sound basis or legitimate need to take judicial action. *Id.* In a different context, the Eleventh Circuit court has identified four factors for ascertaining the existence of good cause which include "[1] the severity and the likelihood of the perceived harm; [2] the precision with which the order is drawn; [3] the availability of a less onerous alternative; and [4] the duration of the order." *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d

*Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986). Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test. *See id.* (citing *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978) (requiring "a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements")). Moreover, the alleged harm must be significant, not a mere trifle. *See Cipollone*, 785 F.2d at 1121 (citing *Joy v. North*, 692 F.2d 880, 894 (2d Cir. 1982)).

In this case, good cause does not exist for the entry of such an order. There is no reason why the Defendants should be expended monies to engage in discovery under the facts set forth above, which are undisputed. The concerns that in fact Plaintiff could not possibly have worked overtime hours and even if she did she was an independent contractor actively competing against Defendants (while at the same time sometimes providing services to the corporate Defendant) are very real based on this record.

It has long been recognized that trial courts are vested with broad discretion to manage the conduct of discovery. *See, e.g., Brennan v. Local Union No. 639, Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers,* 494 F.2d 1092, 1100 (D.C. Cir. 1974); Fed. R. Civ. P. 26. It is settled that entry of an order staying discovery pending determination of dispositive motions is an appropriate exercise of the court's discretion:

> A trial court has broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined.

*Petrus v. Bowen,* 833 F.2d 581, 583 (5th Cir. 1987) (citations omitted); *see Ladd v. Equicredit Corp. of Am.,* 2001 WL 175236, at *1 (E.D. La. Feb. 21, 2001); *White v. Fraternal Order of Police,* 909 F.2d 512, 517 (D.C. Cir. 1990).

In accordance with this broad discretion, one court (Oberdorfer, J.) has observed that

> [i]t is well settled that discovery is generally considered inappropriate while a motion that would be thoroughly dispositive of the claims in the Complaint is pending.

*Anderson v. United States Attorneys Office,* 1992 WL 159186, at *1 (D. D.C. 1992). A stay of discovery pending the determination of a dispositive motion "is an eminently logical means to prevent wasting the time and effort of all concerned, and to make the most efficient use

---

1193, 1205 (11th Cir. 1985). In addition, the Eleventh Circuit has superimposed a "balancing of interests" approach to Rule 26(c). *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985).

of judicial resources." *Coastal States Gas Corp. v. Department of Energy,* 84 F.R.D. 278, 282 (D. Del. 1979) (citations omitted).

In *Anderson,* a motion to dismiss that would have been dispositive of all of the issues was pending when the court considered plaintiff's motion to compel discovery and defendant's motion for protective order. In this action, each defendant has filed a motion to dismiss. *See Anderson,* 1992 WL 159186, at *1. While a stay of discovery pending determination of a motion to dismiss "is rarely appropriate when the pending motion will not dispose of the entire case[,]" *Keystone Coke Co. v. Pasquale,* 1999 WL 46622, at *1 (E.D. Pa. 1999), no such concern exists here, since the parties agree that the grant of Defendants' Motion to Dismiss will be dispositive of "the entire case."

## CONCLUSION

For the foregoing reasons, the Defendants' Motion should be granted, as this particular case is unusual in that 1) the Plaintiff's own invoices establish that she was not providing services for more than 40 hours in any one week, and 2) that Plaintiff was an independent contractor as she was openly competing against the Defendants, which is why she provided so little services to them during the statute of limitations period.

## CERTIFICATE OF CONFERRAL

We conferred with Plaintiff's counsel who objects to the relief sought, and stated so in writing.

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on April 25, 2019, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record (Brody Shulman, Esq.) or *pro se* parties identified on the attached service list in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel of parties who are not authorized to receive electronically Notices of Electronic Filing.

                                              Glasser & Kleppin, P.A.
                                              Attorneys for Plaintiff
                                              8751 W. Broward Blvd.
                                              Suite 105
                                              Plantation, FL 33324
                                              Tel.  (954) 424-1933
                                              Fax  (954) 474-7405
                                              E-mail:  ckleppin@gkemploymentlaw.com


                                              By___s/Chris Kleppin_____
                                                   Chris Kleppin
                                                   Fla. Bar No. 625485

C:/MyDocuments/ProgressiveBehavioralScience/DefMforProtectiveOrder04/25/19